

**FILED**

Apr 10 2015, 9:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| Jeffrey D. Stonebraker<br>Clark County Chief Public Defender<br>Jeffersonville, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Kenneth E. Biggins<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy Middleton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 10, 2015<br><br>Court of Appeals Case No.<br>10A04-1407-CR-317<br><br>Appeal from the Clark Circuit Court;<br>The Honorable Vicki L. Carmichael,<br>Judge;<br>10C04-1309-FC-246 |

**May, Judge.**

Jeremy Middleton challenges the sufficiency of evidence support his conviction of Class D felony theft.[1]

We reverse.

## Facts and Procedural History

On September 19, 2013, Middleton entered Rural King with two other people. Employees notified Roxanne Mundy, a department manager, of suspicious behavior. Mundy started to observe and follow Middleton. Mundy saw Middleton attempt to cut the security device from a product, but she was unable to identify that product. Mundy thought Middleton saw her, and Middleton then left the store.

Doug Burdin, another department manager, and Christopher Watkins, the store manager, followed Middleton and Mundy into the parking lot in order to obtain a license plate number or a car description. Middleton said to Mundy: "Why are you following me? I've got nothing." (Tr. at 84.) Mundy insisted Middleton return "what you have." (*Id.* at 31.) Both Mundy and Middleton threatened to call the police. During their interaction, Middleton was raising his shirt and putting his hands in his pockets. At one point, Middleton pulled a knife from his pocket, which he dropped and Mundy retrieved. Mundy gave the knife to Watkins.

_____

[1] Ind. Code 35-43-4-2 (2013).

[5] Watkins saw a police car driving nearby and flagged down Officer Jeff Gordon to assist. Middleton, on seeing the police, started running away. Burdin watched where Middleton was going and pointed him out to Officer Gordon. Officer Gordon was able to catch Middleton and arrest him. Middleton declared his innocence.

[6] At trial, in support of the theft charge,[2] the State presented the testimony of Mundy, Watkins, and Burdin. Middleton objected to parts of their testimony as hearsay. The court allowed the testimony, but it admonished the jury that the testimony was to be used to explain the actions of the Rural King employees, not to prove the truth of the matter asserted. The jury found Middleton guilty.

## Discussion and Decision

[7] On appeal, Middleton asserts there was insufficient evidence to support his conviction of Class D felony theft.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the

---

[2] The State also charged Middleton with intimidation, a Class C felony, based on his pulling a knife from his pocket during the interaction with Mundy. The jury convicted him of that charge, but he does not challenge it on appeal.

conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (quotations, citation, and footnote omitted) (emphasis in original).

[8]     Theft is committed when a person "knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value. . . ." Ind. Code § 35-43-4-2. Middleton's charging information pertaining to the theft stated:

> On September 19, 2013, in Clark County, State of Indiana, JEREMY LEE MIDDLETON did knowingly or intentionally exert unauthorized control over a range-finder of Rural King, with intent to deprive Rural King of any part of its value or use.

(App. at 6.)

[9]     As to this charge, the testimony of Mundy that was offered for the truth of the matter asserted was that she followed Middleton through the store; she saw him cutting on a security device, but she could not see the product he was attempting to extricate; and she followed him outside. The testimony of Burdin and Watkins that was admitted for the truth of the matter asserted related only to Middleton's actions after leaving the store.

[10] With the removal of the hearsay testimony,[3] which the jury was admonished was "not . . . offer[ed] . . . for the truth of the matter asserted, simply, so the Jury can understand what she did," (Tr. at 14), and "not saying anything for the truth of the matter asserted," (*id.* at 18), the evidence presented against Middleton as to the charge of theft amounts to Mundy's statements that she followed him, she saw him using a knife on a security device, and he left the store. Although Mundy saw Middleton using a knife on something, she was unable to identify the product. No other evidence was presented to prove Middleton took a range-finder. That is not sufficient evidence from which a reasonable jury could infer Middleton knowingly or intentionally exerted unauthorized control over a range-finder. *See Williams v. State*, 714 N.E.2d 671, 674 (Ind. Ct. App. 1999) (insufficient evidence to support conviction when all elements of theft were not proven).

## Conclusion

[11] The evidence was insufficient to support Middleton's conviction of Class D felony theft; therefore, we reverse.

[12] Reversed.

---

[3] The testimony objected to on hearsay grounds pertained to why Mundy started following Middleton, a cashier's report of someone in line talking on a phone saying Middleton was being followed and they needed to leave, and the report of the discovery of a range finder under some animal feed.

The employees who allegedly saw Middleton with a range finder were not called to testify. The employees who allegedly discovered a range finder in the animal feed were not called to testify. No surveillance video was entered into evidence. No pictures of a range finder were entered into evidence.

Barnes, J., and Pyle, J., concur.